SMITH LENT, Appellant, *v.* ABRAM S. UNDERHILL, Respondent.

*Libel — a report at a school meeting pointing out irregularities in the school district finances is privileged — also a newspaper article in answer to criticisms·upon such report.*

A report of a committee appointed at a school meeting to examine the financial report of the board of trustees of the school district, pointing out irregularities in the finances of the district, read before the school meeting and subsequently published, is privileged unless prepared in bad faith and with actual malice.

The same is true of a newspaper article written by a member of the committee — in answer to another newspaper article written by a member of the board of trustees criticising and ridiculing the report of the committee — in which the writer reiterates and discusses the statements made in the original report, which were true, and calls upon the board of trustees for an explanation.

APPEAL by the plaintiff, Smith Lent, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Westchester on the 17th day of April, 1900, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case on the ground that the plaintiff had failed to establish a cause of action, and also from an order entered in said clerk's office on the 17th day of April, 1900, dismissing the complaint.

*Smith Lent*, appellant, in person.

*Frank L. Young*, for the respondent.

WOODWARD, J. :

The defendant and four other gentlemen were appointed a committee, by vote of a public school meeting held in Sing Sing Free School District No. 1, of the town of Ossining, August 1, 1899, to examine the financial report of the board of trustees of the district, and to report at an adjourned meeting to be held on the twenty-second day of August. The plaintiff was a member of the board of trustees, and on the coming in of this report, which pointed out some irregularities in the finances of the district, he caused to be published a criticism of the report. Certain members of the committee thereupon made answer to the plaintiff's criticism, in which the statements made in the original report were in a measure reiterated, with comments calculated to emphasize them in the public mind, and to lessen the effect of the plaintiff's criticism. The complaint asserts two causes of action, one for the original report, which was read before the school meeting and subsequently published, the other for the statements contained in the defendant's reply to the plaintiff's criticism of the original report. Upon the trial of the action the learned court dismissed the complaint at the close of plaintiff's evidence, holding that the "report was privileged, and even if the statements contained in it were not true, it is not actionable, without proof of express malice," and that there was "no such proof sufficient to go to the jury." In reference to the second cause of action the court says : " While perhaps the answer to the plaintiff's explanation, published in the newspaper, may not be privileged (though I think it is, the explanation having been itself so published), it was not false, and, therefore, not actionable." From the judgment appeal comes to this court.

Under the rule laid down in *Mattice* v. *Wilcox* (147 N. Y. 624, 636, citing *Lewis* v. *Chapman,* 16 id. 369), " where one has an interest in the matter published, or a duty, even though not of a legal nature, but one only of a moral or social character and of imperfect obligation, and there is a propriety in the publication, and the party makes a statement in good faith to another who has some similar duty or interest, or to whom a like propriety attaches to hear or read the utterance, such a publication is privileged," there can be no doubt that the court was within the law in holding that the original report was privileged. The committee was raised by a vote

of a public meeting to investigate the accounts of officers making a report to such meeting, and in the absence of proof that the committee or this defendant acted in bad faith and with actual malice in preparing and submitting the report, the plaintiff has no cause of action. There is no evidence in the case which would warrant a jury in finding malice on the part of the defendant in preparing and submitting the report to the adjourned meeting.

The report of the committee embraced several recommendations and suggestions, none of which could be fairly said to reflect upon any one in connection with the schools, unless any proposition to change past methods may be construed as reflecting upon the persons who have acted differently, and such may be dismissed without further consideration.

The material matters are found in the following statements: " In regard to the investigation of the books of the district, we find that on June 27, 1896, a note was issued for $1,500 for which no credit appears on the books of the trustees, either at that or any subsequent time. This note was outstanding for the full amount at the time the annual report was made up in July, 1896, but afterwards reduced by endorsement $401.13, leaving a net amount of $1,098.83, which was paid April 28th, 1897, out of the school funds. While, however, this note was paid, we find that the next report of July, 1897, did not accurately represent the state of the finances, or show the apparent loss of the said amount, as there was in July, 1897, another note of $1,000 outstanding, which had been borrowed May 28th, 1897, and was paid September 1st, 1897. In the report of July, 1897, the fact is not mentioned that said note was outstanding. In the report of July, 1896, it further appears that there was a note of $4,000 outstanding, no mention of which is made. This note was paid July 6th, 1899, and it is believed that the Board is now clear of debt. The effect of these transactions and reports is that the loss of the amount of the note of June 27th, 1896, did not finally appear in the accounts as an expenditure until July 6th, 1899, and the actual loss on said note is $1,098.83, with interest from April 28, 1897. In the absence of a sufficient explanation, it would, therefore, appear that the accounts of the trustees should be charged back with that amount."

The plaintiff having undertaken to explain and to ridicule the

.report of the committee, the committee, or a portion of the committee, the defendant being among them, responded through the public press, making use of the matters contained in the original report, perhaps the most serious being that "The Judge (this plaintiff) still seeks to confuse the shortage found by the committee with the $1,500 given Isaac B. Noxon, which is not the case. Mr. Noxon was paid in May, 1896, $1,500 by check, which cancelled check we saw. That ended that transaction. In June of the same year, Mr. Lent and Mr. Many raised $1,500 by note. Now where did this $1,500 go? This is not the Noxon $1,500." By this the plaintiff charges that the defendant meant thereby "falsely, maliciously and willfully charging and intending to charge that the plaintiff made a false statement of the financial condition of the district and that he and Mr. Many had appropriated $1,500 of the moneys of said district, thereby charging and intending to charge that the plaintiff had committed the crime of larceny."

On the trial of the action it was established by the plaintiff's evidence that prior to 1896 one Noxon had acted as treasurer for the school district without compensation; that in that year Noxon left town, and Mr. Groton, the clerk of the board, called the attention of the plaintiff to the fact that there was a shortage in the account of Mr. Noxon amounting to $1,098.87. Subsequently Mr. Noxon returned to Sing Sing, representing himself to be very poor, and requesting that some compensation for his past services be paid him. By agreement the sum was fixed at $1,500, and a check or draft for this amount was placed in the hands of the plaintiff to be delivered to Mr. Noxon when he should be satisfied that there was no shortage in the latter's account with the district. The plaintiff says that the accounts were looked over by Mr. Groton and Mr. Noxon; that the latter insisted that he had not used one penny of the school funds, and the plaintiff, relying upon this statement, gave him the $1,500 check or draft. Subsequently Noxon admitted to the plaintiff, in a written statement, that he was short in his accounts $1,098.87, but he never made any restitution of this amount, so far as appears. When the note of June 27, 1896, was given there was a shortage in the account of the treasurer to the amount of $1,098.87, and the note was for $1,500, on the principal of which there was a subsequent payment of $401.13, leaving the amount of the note

unpaid $1,098.87, the exact amount of Mr. Noxon's shortage as reported to the defendant. This note was afterward paid out of the school moneys, and there is no credit on the books of the trustees, the bookkeeper explaining that he made no entry "because it was already charged, because that was a deficiency to make up the deficiency." The plaintiff insists, however, that he did not know of these facts; that the books were kept by Mr. Groton, who made out the reports, and that all of these matters were stated to the defendant before the last publication complained of. But the committee and this defendant have not charged that the plaintiff has been guilty of the high crimes and misdemeanors suggested in his complaint; they have simply stated the facts as they actually existed according to the plaintiff's own evidence, and stated that "in the absence of a sufficient explanation, it would, therefore, appear that the accounts of the trustees should be charged back with that amount," referring to the amount of the shortage of Mr. Noxon, and which is not accounted for by the report of the trustees during the years that have intervened since the defalcation.

The allegations being true, and the evidence of the plaintiff shows all the important statements of the report to have been true, including the reference to the check of the plaintiff carried by the treasurer, the defendant, in support of the report of the committee against the attack of the plaintiff, had a right to reassert the facts, and to make any legitimate inferences from such facts. If the report was true, it was a matter in which the public were interested in such a manner as to make a discussion of its merits proper, and the plaintiff having chosen the forum, the defendant might question his statements of fact and deny them; he might expose misrepresentations and point out errors; he might combat his reasoning and show his conclusions ill-drawn, and he might do so with satire and ridicule, so long as he directed those missiles at the article and the contents of it. But he could not attack the private character of the author; to do so would be libelous. (*Hamilton* v. *Eno*, 81 N. Y. 116, 125.) There is no attack on the plaintiff's private character; there is no charge that he has been corrupt; but a state of facts existing in connection with the reports issued by the plaintiff and others as trustees of a school district is brought before the community in a regular and orderly manner, and the suggestion is made that, in the absence of an

explanation, a certain amount should be charged back upon the trustees, and the whole discussion is based upon the facts thus brought to light, and which, in so far as the defalcation or shortage is concerned, may be explained by a mere recital of the facts. Whether the defendant was justified in his conduct in making these reports without setting forth all of the facts is not open for discussion; the question is, were the facts true as stated by the committee, and upon this question there is no evidence which does not support the letter of the report. The original report being true, and the subsequent discussion being based upon the facts of the original report, there could be no libel unless the defendant went outside of the facts in the discussion. A careful examination of the whole question convinces us that the defendant did no more than to insist upon the facts as shown by the report, and to demand that the plaintiff make an explanation of the facts to show why the sum of $1,098.87 ought not to be charged back upon the trustees. That amount of money has been lost to the district; it was paid by a note given, apparently, for that particular purpose, and that note was paid out of the funds of the school district, and the people of the district have a natural right to an explanation.

The judgment appealed from should be affirmed.

All concurred, except BARTLETT, J., absent.

Judgment affirmed, with costs.

---

NOTE.— The rest of the cases of this term will be found in the next volume, 55 App. Div.— [REP.