Thornwell K. Peeples, Claimant, *v.* The State of New York, Defendant.

(Claim No. 25105.)

Court of Claims, December 28, 1942.

*William A. Mulvey* for claimant.

*John J. Bennett, Jr., Attorney General (Leon M. Layden* of counsel) for defendant.

BARRETT, P. J. On April 26, 1937, the State Department of Audit and Control examined the accounts and fiscal affairs of the village of Red Hook, Dutchess county, for the period covering March 1, 1936, to April 26, 1937. The examination was completed May 3, 1937, but it was November 22, 1937, before the manuscript report was finally printed and sworn to. This report was sent by the Deputy Comptroller to the Village Treasurer of Red Hook on November 26, 1937. The following December 30th a copy of the report was printed in the local Red Hook newspaper. The claim was filed on February 2, 1938, within ninety days after the publication of the alleged libels included in the foregoing report, thus conferring jurisdiction on this court to hear the claim. (Court of Claims Act, § 15, as added by L. 1936, ch. 775.)

Claimant was a Police Justice in the village of Red Hook during the period covered by the report. As such Justice claimant's records were examined pursuant to section 35 of the General Municipal Law (Cons. Laws, ch. 24) and the results published as a public record. The pertinent language of that report, as applied to claimant, was as follows:

" Upon examination of the dockets of the police justice it was found that pages 180, 189, 257 and 291 of the old docket and page 3 of the new docket did not show the disposition of the cases thereon. This is contrary to the provisions of Section 220 of the Code of Criminal Procedure which provides in part that ' * * * and every police or other special justice appointed or elected in a city, village or town, * * * shall forthwith enter correctly at the time thereof, *full minutes of all business done before him as such justice.* * * *.'

" It was also noted that the police justice has been long delinquent in the matter of turning over to the village fines assessed on cases coming before him. * * *

" In view of this laxity on the part of the police justice it seems wise to quote in part Section 185 of the village law." (This section was quoted. It requires a Police Justice to account monthly for the fees and fines collected by him and making the same a condition precedent to the payment to him of his salary.)

" Examination of the dockets of the police justice also disclosed the fact that numerous fines collected by him for viola-

tions of the Vehicle and Traffic Law, with but one exception, had not been paid over to the state. On the one case remitted by him he received a fee of $2.40 which was sent to him on April 8, 1937. This fee no doubt will be turned over to the village treasurer with the other fines for the month of April, 1937.''

The alleged libels are said to consist in the statements made in the report referring to (1) the incompleted pages of the criminal dockets, (2) the Justice's delinquency in turning over fines to the Village Treasurer, and (3) claimant's failure to remit to the State Comptroller fines collected for violations of the Vehicle and Traffic Law.

(1) Incomplete docket entries. The first question presented is whether the auditors' statement that the dockets failed to show the disposition of cases on certain pages was defamatory. Claimant has failed to sustain that burden of proof. The examiners only stated what appeared to them to be the case, namely, that a certain section of the Criminal Code required a Police Justice to make full minutes of all the business done before him, and their observation was that certain specified entries did not measure up to this standard. Such a measured and objective observation by the State's employees hardly approached the line of forthright criticism, let alone entered that realm of communications which tend '' so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'' (Restatement, Law of Torts, § 559.) Section 220 of the Criminal Code made the failure to comply therewith a misdemeanor. The published accusation that claimant violated section 220 does not impute to claimant the kind of criminal conduct that supports an action for libel. The accusation, even if true, charged the violation of a section purely regulatory in character. The noncompliance so charged was so trivial that it did not tend to injure claimant's reputation. Inasmuch as the words are not defamatory we need not here consider the defenses of truth and privilege.

(2) Delinquent remission of fines to Village Treasurer. That part of the report stating that claimant '' has been long delinquent in the matter of turning over to the village fines assessed on cases coming before him '' was established as true and is a complete defense to the charge of libel. (*Mack, Miller Candle Co.* v. *Macmillan Co.*, 239 App. Div. 738; affd., 266 N. Y. 489.) There was no statement that the fines had not been turned over at all, but merely the statement that the Police Justice had been '' lax '' in the remission of his fines.

Furthermore, the statement was not defamatory. Claimant mistook a clear charge of delinquency for an accusation of dishonesty. As was said in *Lent* v. *Underhill* (54 App. Div. 609), where the report of a school district committee publishing a statement exposing the accounts of the Board of Trustees was alleged as a libel, " The report of the committee embraced several recommendations and suggestions, none of which could be fairly said to reflect upon any one in connection with the schools, unless any proposition to change past methods may be construed as reflecting upon the persons who have acted differently, and such may be dismissed without further consideration."

There is imputation neither of crime nor dishonesty nor professional misconduct, but only a constructive suggestion that the Police Justice mend his ways to conform to the statute. And this suggestion was as much directed to the Board of Trustees, who presumably continued to pay claimant his monthly salary without first satisfying themselves that the Justice had properly accounted to the Village Treasurer and Clerk, as it was to the Justice himself.

(3) Failure to pay over to the Comptroller fines collected. Finally, that statement in the report that " numerous fines " collected by the Police Justice for violations of the Vehicle and Traffic Law, " with but one exception, had not been paid over to the state," was at least ambiguous. Where the alleged defamatory statement is ambiguous it is for the jury, or, as here, the court sitting as the trier of fact to determine whether the statement is " capable of being understood in an innocent and harmless, as well as an injurious sense  *  *  *." (*Lewis* v. *Chapman*, 16 N. Y. 369.) Disregarding what the auditors intended to say, as well as the nice grammatical distinctions an expert might conjure up, a layman might take this passage to mean that the Police Justice failed, *with but one exception,* to turn over all the State fines he had collected. This was not the fact, for claimant had several receipts from the Comptroller for moneys paid during the period under examination. If to a layman the charge carried with it the idea not only of dishonesty and official misconduct, but also the commission of a crime, this would be defamation *per se* and the State would be held to answer, at least for nominal damages, unless it could be said that the communication was privileged.

The report, even if untrue and motivated by malice, would not entail liability if it were absolutely privileged. (*Hyman* v. *Press Publishing Co.,* 199 App. Div. 609.) The Attorney-General urges us to stretch the veil of absolute privilege over every part

of this report. This we can not do. The rule of absolute privilege was designed particularly and peculiarly for the protection of those public officers acting in a judicial, legislative, or executive capacity and was not intended as a shield for the unguarded, reckless, or malicious statements of all who perform governmental functions. (See Restatement, Law of Torts, Vol. III, Introductory Note, p. 223 *et seq.;* also, § 585 *et seq.*)

The examiners' report rather carried with it the protection of qualified or conditional privilege. The rule is well stated in section 595 of the Restatement of the Law of Torts:

" (1) An occasion is conditionally privileged when the circumstances induce a correct or reasonable belief that

- (a) facts exist which affect a sufficiently important interest of the recipient or a third person, and
- (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct."

The facts reported herein were of vital importance both to the Board of Trustees and to the citizenry of Red Hook. (*Lent* v. *Underhill, supra.*) Section 35 of the General Municipal Law gave the State the power to examine into the financial affairs of the municipality and made the report a public record in the offices of both the Comptroller and " the chief fiscal officer of the municipality, each of which shall be open to public inspection."

We thus conclude that as a matter of law this communication was conditionally privileged. The burden now shifts to the claimant to prove the abuse of that privilege or, to use the traditional phrase, to show " malice." (See *Byam* v. *Collins,* 111 N. Y. 143, 150.) There is not the slightest evidence in the record of " actual malice." Therefore, to support his allegation of malice, claimant relies on the severity of the charges made and the recklessness with which the report was prepared. All of the cases cited by claimant in support of this argument that the privilege was destroyed are instances of aspersive personal attacks on the one defamed, or other unmistakable abuses of the privileged occasion. But we are here concerned with a case where the State examiners found a Police Justice not up to date in the remission of his fines, and, in trying to convey the criticism of delinquency, these examiners clumsily phrased their report. The " numerous fines " referred to were probably those which the Justice had not, at the time the report was made, turned over to the Comptroller. That these fines were turned over after the

examination was made, but before it was printed and sworn to, does not alter the examiners' original observations. There must be an end to an investigation. The day this investigation ended was May 3, 1937, the day the examination in the field was completed. The report itself specifically limited the period under examination to the "Fiscal year ended Feb. 28, 1937 and to April 26, 1937 of the current Fiscal year."

To the charge that the auditors failed thoroughly to investigate during their actual examination, the answer is twofold: (a) There was no statutory obligation resting upon the auditors to go beyond the books under review; (b) the auditors in fact made two unsuccessful attempts to go beyond the books and confer with the Justice personally. The examiners had reasonable cause to believe from the documents which they examined that claimant had not properly accounted for all the fines collected. To report this fact was their duty.

The type of clumsy and inexact expressions used in this report may frequently occur in public documents of this character. Such carelessness would not excuse the publisher of a communication that was not privileged, and this even though the defendant could prove absolute good faith. But neither is this carelessness so wanton and reckless as to " imply " the malice which destroys a conditionally privileged occasion. To hold otherwise would be either to saddle the State with libel awards growing out of the conscientious, but not infallible, performance of its innumerable report-making duties or to make those who prepare such reports so timid in the discharge of their duties as to defeat the whole purpose of such examinations. We conclude, therefore, that in the absence of personal attacks against those who claim to be defamed, or proof that an investigation and the report thereof are so carelessly executed as to deserve the charge of being wanton or reckless, mere negligence alone will not dislodge the mantle of qualified privilege from reports such as the one in dispute which are prepared under the authority of the Legislature.

RYAN, J., concurs.