Russell G. Hunt, J.
These are motions by the State, pursuant to rule 106 of the Rules of Civil Practice, for judgments dismissing the two claims filed herein upon the grounds that it appears from the face of each that this court does not have jurisdiction of the subject matter therein contained, or, if the court does have jurisdiction, then, that the claims are legally insufficient in that neither states facts sufficient to constitute a cause of action.
The claims were filed on December 23, 1959. The first one filed alleges that on December 5, 1959, an Assistant Attorney-General slandered the claimant in the presence of a reporter for a newspaper, and, in the second claim, as a separate and distinct right and cause of action, it is alleged that the claimant was libeled because the person uttering the slander caused or instigated it to be published in the reporter’s newspaper. As a result, each claim alleges, the claimant sustained injury to its credit, reputation and business for which the State, the employer, should respond in damages.
The jurisdiction of this court extends to claims against the State ‘ ‘ for the torts of its officers or employees while acting as such officers or employees ” (Court of Claims Act, § 9, subd. 2), and, since libel and slander are torts (1 Cooley, Torts [4th ed.], ch. 7; Peeples v. State of New York, 179 Misc. 272; see, also, General Construction Law, § 37-a), this court has jurisdiction of claims against the State for libel and slander committed by one of its officers or employees and its liability in these respects is to be “ determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ”. (Court of Claims Act, § 8.)
It appears that under date of November 23,1959 the Attorney-General issued a subpoena duces tecum directed to the claimant which required it to appear at the former’s office on November 30,1959 with its books and records relating to sales of aluminum storm windows and doors. This was the commencement of an investigation to determine whether the claimant’s corporate charter should be annulled pursuant to article 8 of the General Corporation Law. Thereunder, and, insofar as applicable here, the Attorney-General is authorized to bring an action, upon leave of a court first obtained, to vacate the charter or annul the existence of a corporation upon the ground that it has ‘ ‘ Violated any provision of law whereby it has forfeited its charter, or by the abuse of its powers it has become liable to be dissolved ’ ’, or that it has ‘ ‘ Done or omitted any act, which amounts to a surrender of its corporate rights, privileges and *727 franchises ” (General Corporation Law, § 91, subds. 2, 4). In this connection, the Attorney-General is authorized 11 to take proof and make a determination of the relevant facts ’ ’ (General Corporation Law, § 92, subd. 2), presumably, for the purpose of making the required showing of facts upon application to a court for leave to bring the action, because the court is “ vested with discretion to grant or withhold such leave according to the circumstances of each case as presented.” (People v. Bleecker St. & Fulton Ferry R. R. Co., 140 App. Div. 611, 615, affd. 201 N. Y. 594.) The subpoena herein was issued to find out if there were sufficient facts to support an application addressed to the court’s discretion.
On November 27,1959 the claimant obtained from a Supreme Court Justice an order, staying the investigation and requiring the Attorney-General to show cause on December 11, 1959, at a Special Term of the Supreme Court, why the subpoena should not be vacated. On December 5, 1959 and prior to the return date of the order to show cause, it is alleged that the Assistant Attorney-General said to the reporter during an interview, of and concerning the claimant, that the complaints against it ‘ ‘ are the usual bait advertising racket” [sic] and that the claimant offered ‘ ‘ goods at ridiculously low prices to attract people and then try [sic] to switch customers to buying something else. If the customer insists on having what is advertised then the firm goes on a sit-down strike and the article is never forthcoming. Eventually the customer gets disgusted and goes elsewhere for what he wants ”. Thereafter, the quoted words were published in a newspaper and these claims followed.
Upon a motion to dismiss for legal insufficiency a court accepts 1 ‘ as true the material allegations of fact contained in the complaint and any reasonable inference that may be drawn therefrom ” (Garvin v. Garvin, 306 N. Y. 118, 120). The possibility that the proof may fall short of establishing the allegations as facts is not of concern at this stage of the matter and the claims must be sustained if causes of action are properly stated (Denihan Enterprises v. O’Dwyer, 302 N. Y. 451). “ Our inquiry is as to whether the pleading (liberally construed, see Civ. Prac. Act, § 275) states, in some recognizable form, a cause of action known to the law * * *. If in any aspect upon the facts stated the plaintiff is entitled to recovery the pleading is good. It is deemed to allege whatever can be implied from its statements by fair intendment and the whole of it must be considered.” (Howard Stores Corp. v. Pope, 1 N Y 2d 110,114.)
Applying these rules, 11 and without stretching the meaning of the words, this complaint says to us that” (p. 114, supra) *728 the claimant herein was charged with seeking and intending, by reason of its business practices, to dupe, cheat and defraud the public by unethical means and grossly unfair advertising and that these charges hurt and prejudiced the claimant in its business. The words are slanderous per se and are actionable. Words are slanderous per se where they “ tend to injure a party in his trade, occupation or business ” (Moore v. Francis, 121 N. Y. 199, 203; see, also, Tex Smith, Inc. v. Godfrey, 198 Misc. 1006; 3 Restatement, Torts, § 570).
In the claim for libel, the claimant has set forth the words quoted above, and, these, it is alleged, the Assistant Attorney-General “ maliciously caused to be published ” in the reporter’s newspaper. Since these words were allegedly printed and published of and concerning the claimant and its business, they, too, like the slanderous words above, tended to injure and prejudice and are actionable as and for a libel (Moore, v. Francis, supra). The making of a slanderous statement to a newspaper reporter which would be libelous if published makes the one who utters it equally responsible and the pleading is sufficient where it alleges that the latter caused the publication (Seelman, Law of Libel and Slander in the State of New York, p. 130; 3 Restatement, Torts, § 577; see, also, Penal Law, § 1348, relative to criminal libel under the circumstances alleged). Whether the slander has been merged into the libel has not been raised and argued by the parties. It has been considered; but, in view of the disposition of the motions, hereinafter made, and, in the interests of justice and to avoid possible prejudice to the claimant, the question is reserved for disposition by the trial court (see Franklin v. Columbia Pictures Corp., 246 App. Div. 35, affd. 271 N. Y. 554; Shor v. Billingsley, 4 Misc 2d 857, affd. 4 A D 2d 1017, motion for leave to appeal denied 5 A D 2d 768).
Because the quoted words are actionable per se, the State may be required to prove the truth of the imputation or to concede its falsity and establish the privileged character of the slander and libel. The State, in its brief, however, does not contend that the imputation is based on truth and does not deny that the Assistant Attorney-General uttered the quoted words, hence, it foregoes the defense of justification (Seelman, Law of Libel and Slander in the State of New York, p. 146). It is frankly admitted that the utterer was in the process of investigating the truth of complaints agains the claimant and at the time had no facts to support his words; thus, too, is destroyed the basis for the defense of fair comment (Cheatum v. Wehle, 5 N Y 2d 585, 592). In these circumstances, the State contends for an absolute privilege, which, if it exists, would call for the dismissal of the claims.
*729 Absolute privilege is the doctrine of immunity which was pleaded as a complete defense by the defendant, State Conservation Commissioner, in the Cheatum case (supra). The defense was not allowed there as a matter of law. The doctrine, it was therein stated (pp. 592-593), “ is recognized in this State, being based upon ‘ consideration of public policy and to secure the unembarrassed and efficient administration of 'justice and public affairs ’ * * * and has been held to include ‘ official reports and communications by or to the executive head of a department of the government ’ ”. Judge Dye, in that case, said that what could be done under the immunity, however, was ‘ ‘ not to be confused with comments made in the course of an after-dinner speech” (by Commissioner Wehle and wherein he allegedly slandered Dr. Cheatum, the head of a bureau in the Conservation Department) “ to a group of citizens who can do nothing about it in any event. To extend the absolute privilege to such activities would lead to all sorts of abuses and do great harm to individual victims without improving the service of government ” (p. 593). Commissioner Wehle, it was pointed out, had an orderly and legal means of dealing with the person who was the object of his charges and wherein the latter would have had an opportunity to be heard. So here, there was an orderly means at hand to remedy the condition of which complaint was made and wherein the party complained of would have had an opportunity for a hearing to defend itself (General Corporation Law, art. 8). The words uttered by the Assistant Attorney-General were not in the nature of an official report, or, for the purpose of influencing action by a State officer or agency, or, with the object of improving the service of government, and, were not made to a person who was qualified by interest or duty to receive them (Byam v. Collins, 111 N. Y. 143; Bingham v. Gaynor, 203 N. Y. 27). There was no moral or legal duty to advise a newspaper reporter regarding the claimant’s alleged reprehensible conduct of its business “ because the audience could do nothing about it in any event ” (Cheatum v. Wehle, 5 A D 2d 448, 451). “ The rule of absolute privilege was designed particularly and peculiarly for the protection of those public officers acting in a judicial, legislative, or executive capacity and was not intended as a shield for the unguarded, reckless, or malicious statements of all who perform governmental functions.” (Peeples v. State of New York, 179 Misc. 272, 276, supra.) Under the circumstances disclosed upon these motions the immunity doctrine does not embrace the quoted words which were attributed to the Assistant Attorney-General.
The motions are denied. Submit orders accordingly.