Scileppi, J.
On or about March 5,1958, defendant, then serving as President of the Borough of Queens and as a member of the Board of Estimate of the City of New York, submitted a report to the Mayor, copies of which eventually also were delivered to other members of the board, concerning the city’s acquisition by condemnation of real property located on the Bockaway Peninsula in Queens, known as Edgemere Park. The report, it appears, resulted as a consequence of a general discussion of the subject of condemnation practices and procedures at a meeting of the board on February 13,1958.
Defendant’s report, heretofore referred to, embodied the following excerpt:
“ Nor is it possible to believe that the City’s appraiser could have reached the conclusions set forth in his appraisal report except on the basis of misinformation, ignorance, distortion and incompetence. * * * Even a perfunctory, superficial investigation of the conclusions reached by the City’s appraiser should have alerted the office of the Corporation Counsel to the worthlessness of this appraiser’s report.
“As President of the Borough of Queens, I respectfully request that this appraiser, Mr. James C. Sheridan, be permanently removed from the panel of appraisers employed by the City of New York ’\
Since the entire subject of condemnation was commanding public interest and concern during this time, various newspapers were seeking a release of the report. Finally, on June 13, 1958, some three months after the report had been submitted to the Mayor, defendant made available a copy of said report for inspection by newspaper reporters. Thereafter, several articles incorporating the quoted language were published in various newspapers.
This libel action is predicated on the publication of the quoted words, alleged to be defamatory, in both the report to the Mayor and in newspapers. Defendant in substance asserted the affirmative defenses of absolute and qualified privilege.
Following the joinder of issue, defendant moved for summary judgment. Special Term denied the motion on the ground that *112 the pleadings and affidavits raised issues of fact. Upon appeal, the Appellate Division affirmed.
The initial question is whether, under the circumstances here, defendant is to be accorded an absolute privilege. The solution in that regard is suggested in Cheatum v. Wehle (5 N Y 2d 585), wherein the court stated (pp. 592-593): “ Under Federal decisions, it has long been held that an executive official is absolutely privileged to publish false and defamatory matter of another in the exercise of his executive function if the matter has some relation to the executive proceeding in which the official is acting (3 Restatement, Torts, § 591). * * * The doctrine of immunity based on official privilege is recognized in this State, being based upon ‘consideration of public policy and to secure the unembarrassed and efficient administration of justice and public affairs’ (Hemmens v. Nelson, 138 N. Y. 517, 523), and has been held to include ‘ official reports and communications by or to the executive head of a department of the government’ (Hyman v. Press Pub. Co. 199 App. Div. 609, 611). The desirability of such a policy is easily recognized as essential in the conduct of official business. For instance, section 164 of the Executive Law requires each department head to make an annual report to the Governor and to the Legislature. It is quite important that .the executive so reporting should be free to make such report without fear of reprisal by civil suit for damages. ¡Such an official report is based on facts and figures which become a public document on a matter of public concern upon which the Governor and the Legislature may rely in proposing budgets and adopting ameliorative legislation. ”
The Cheatum case was obviously concerned with State executive officials. However, the same general considerations of public policy, which demand absolute privilege for .what is said or written by said executives in the discharge of official duty, must certainly apply to a municipal executive such as a Borough President who is charged with substantial responsibilities, not only in administering the public affairs of more than a million people (see New York City Charter, §§ 81-83,196, as in effect in 1958), but also in performing quasi-legislative functions as a member of the Board of Estimate (see New York City Charter, §§ 61-71, as in effect in 1958). Thus a Borough President acting within the scope of his official powers must be accorded the protection *113 of absolute privilege (see Ann. 40 ALR 2d 941; Ann. 132 A. L. R. 1340; Prosser, Torts [2d ed., 1955], § 95, pp. 612-613; see, also, Manceri v. City of New York, 12 A D 2d 895; Lent v. Underhill, 54 App. Div. 609; Cook v. Hill, 3 Sandf. [5 N. Y. Super. Ct.] 341, 349-350; Newfield v. Copperman, 15 Abb. Prac. [N. S.] 360, affd. 10 Jones &Sp. [42 N. Y. Super. Ct.] 302; Hastings v. Lusk, 22 Wend. 410,417; Thorn v. Blanchard, 5 Johns. 508, 530-532; Galligan v. Kelly, 31 N. Y. S. 561; Barr v. Matteo, 360 U. S. 564, 572-578; Bolton v. Walker, 197 Mich. 699; cf. New York Times Co. v. Sullivan, 376 U. S. 254.)
The inquiry now must be directed to whether the defendant’s report here involved was made in the course of the performance of some function connected with the office of Borough President.
Section 384 of the New York City Charter .(as in effect in 1958) granted the Board of Estimate ¡broad powers with regard to condemnation in the City of New York. It follows, then, that defendant was acting within the scope of his official duties when he investigated a specific condemnation proceeding concerning real property in his borough and made a report which included pertinent and relevant statements concerning plaintiff[1] (see Ann. 40 ALR 2d 941, 944, supra; Bolton v. Walker, supra).
Finally, we are of the opinion that the release of the report by defendant to the press some three months after it had been submitted to the Mayor was within the scope of the absolute privilege. The report certainly concerned a matter of public concern, and the defendant was obligated by section 893 of the New York City Charter (as in effect in 1958) to make available to the public on demand any such document kept in his office.
In Bradford v. Pette (204 Misc. 308) Mr. Justice Hill stated (p.323):
“ It appears * * * that the office of the clerk of Special Term, Part I, of this court is in the charge of a Special Deputy to the County Clerk of the County of Queens (Judiciary Law, § 156); that after a determination is processed in his office, * * * the motion papers and the original opinion thereon are filed in his office to await the submission of proposed orders, and that then the original papers and signed opinion are subject to perusal and copy by the public.
*114 “ Had an employee of .the New York Law Journal or anyone else copied the defendant’s opinion from the original filed with the clerk, its publication would * * * be privileged as to * * # vie defendant.” (See, also, Murray v. Brancato, 290 N. Y. 52, 56-57 [wherein the court stated that Judges procuring publication of opinions in the Official Reports are entitled to judicial privilege, since such publication is directed by statute] ; cf. Bingham v. Gaynor, 203 N. Y. 27; Barr v. Matteo, 360 U. S. 564, supra; Howard v. Lyons, 360 U. S. 593; Glass v. Ickes, 117 F. 2d 273, cert. den. 311 U. S. 718; Mellon v. Brewer, 18 F. 2d 168, 172, cert. den. 275 U. S. 530.)
The absolute privilege to which defendant is entitled is a complete bar to this action in libel, regardless of whether the publication was motivated by malice or that the matter so published was false and defamatory. Assuming, however, that only a qualified privilege obtains here, there is insufficient evidence from which a jury might infer malice (see Shapiro v. Health Ins. Plan of Greater N. Y., 7 N Y 2d 56). Certainly plaintiff’s bare assertion that at a meeting with defendant said defendant stated that plaintiff would be “ hurt ” if he did not co-operate in the investigation is not enough. Moreover, plaintiff’s unsupported allegation that defendant’s motive in making the report was a political feud in which he was engaged with a third party is, standing alone, without probative significance. The mere fact that the third party may have been mentioned somewhat unfavorably in the report does not necessarily support an inference that a feud existed, just as in Shapiro an unfavorable report did not support an inference of a pre-existing feud. Finally, defendant’s statement that his report did not represent an exhaustive and complete study cannot be equated an admission that the report was inaccurate or false.
It was error, then, for the courts below to have denied summary judgment here.
The order appealed from should be reversed, and defendant’s motion for summary judgment dismissing the complaint granted. The first certified question is answered in the negative, and the second and third certified questions in the affirmative.

. It is without significance that defendant may have proceeded on his own initiative rather than at the direction of the Mayor (see Barr v. Matteo, supra).