LAURENCE UNIVERSITY, Respondent, *v.* STATE OF NEW YORK et al., Appellants.   (Claim No. 53349.)

Third Department, May 31, 1973.

464

*Louis J. Lefkowitz, Attorney-General (Grace K. Banoff* and *Ruth Kessler Toch* of counsel), for appellants.

*Cunningham, Cole, Sorrentino & Cavanaugh (William J. Cunningham, Jr.,* of counsel), for respondent.

KANE, J. This is an appeal from so much of an order of the Court of Claims, entered on December 20, 1971, which denied defendants' cross motion to dismiss the claim.

Plaintiff is a nonaccredited, profit-making corporation organized under the laws of the State of Florida, presently offering a post-graduate curriculum leading to a doctoral degree (Ph. D and Ed. D) in education. The first classes were offered in July, 1970. It describes itself as " an innovative institution of higher learning ", one of whose purposes is to ease the burden imposed upon a doctoral candidate. Such a candidate at plaintiff's facility must complete a four-week summer session on its campus at a motel in Sarasota, Florida, and at least two consecutive semesters of dissertation guidance under the direction of an approved advisor " using the mails ", conducted anywhere off-campus " while they continue in their normal jobs, without loss of income ". Its literature further states that " Thus, a qualified candidate with normal diligence may complete the Doctoral Program in a single year."

While plaintiff has neither sought nor received consent to incorporate or carry on its business within the State of New York, its activities have generated interest within the State's academic community as evidenced by the fact that in the first year of its operation there were 48 candidates from New York out of a total of 113. This can be attributed in part to the fact that some of the forces behind the organization of plaintiff, including all members of its initial Board of Trustees, were closely tied to the State of New York, and, in fact, one member of its faculty was in the employ of the New York State Department of Education.

Plaintiff's literature and activities also attracted the attention of the Director of Higher Education in the Commissioner of Education's office who submitted a memorandum to his superior dated October 19, 1970, in which he evidenced his displeasure with plaintiff's program and operation characterizing it as a

" *degree mill* " whose methods would " *not be tolerated in any legitimate institution* " and that candidates were " *indulging either in deliberate or conscious self-deception* " (emphasis added). In a subsequent letter directed to the Commissioner, he reiterated his position with an additional reference to the problem of " *legal action against fraudulent outfits in New York State* " (emphasis added), and in a reply from the Commissioner received a memorandum setting forth the Commissioner's agreement with his position. These memoranda were circulated within the Department of Education and form the basis of the claim against defendants for alleged libels.

Upon a cross motion to dismiss the claim, defendants urge three grounds upon which they base their right to relief. First, lack of capacity to sue as a foreign corporation doing business within the State without authority; secondly, the memoranda and letters are possessed with absolute privilege; and thirdly, the truth of the memoranda. We need only consider the second ground.

The Commissioner and his subordinates, acting within the scope of official powers, are afforded an absolute privilege with respect to statements and conclusions such as contained in the memoranda and letters that are the basis for this action (*Lombardo* v. *Stoke,* 18 N Y 2d 394; *Sheridan* v. *Crisona,* 14 N Y 2d 108). Furthermore, he is possessed with broad and comprehensive powers to enforce all laws relating to the educational system and to execute all educational policies determined by the Board of Regents (Education Law, § 305, subd. 1; §§ 308, 102). It is his right and duty to concern himself with the quality of any faculty under his supervision together with its higher educational pursuits to the extent that those pursuits add to or detract from the quality of its performance and its resulting impact upon a student body. Since a considerable portion of the faculty and student body of Laurence University were from the State of New York, and thesis advisors actually met with students on a teacher-student level within the State of New York, the Commissioner had the authority and it was appropriate to make qualitative comments, including informative memoranda to all college presidents and school superintendents in New York, and to such other States as he deemed appropriate (Education Law, § 107). This authority also extends to and includes the non-public institutions of higher learning since the educational standards and requirements which such institutions must meet determine their eligibility for apportionment of State aid by the Commissioner (Education Law, § 6401).

The order should be reversed, on the law and the facts, and the claim dismissed, with costs.

GREENBLOTT, J. P., SWEENEY, MAIN and REYNOLDS, JJ., concur.

Order reversed, on the law and the facts, and claim dismissed, with costs.