HENRY I. STUKULS, Appellant, v STATE OF NEW YORK, Respondent. (Claim No. 59376.)

Third Department, July 22, 1976

*Theodore Fenstermacher (Thomas P. Gilhooley* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General (Alan W. Rubenstein* and *Ruth Kessler Toch* of counsel), for respondent.

GREENBLOTT, J. P. In December, 1974, an ad hoc committee of the State University College at Cortland, composed of five faculty members, met for the purpose of making a recommendation concerning tenure for claimant, a member of the college faculty. During the course of this meeting, Dr. Whitney T. Corey, Acting President of the University, read parts of a previously undisclosed allegedly libelous letter concerning claimant written by an unidentified student. Thereafter claimant instituted an action against the State for libel and slander

and moved for pretrial discovery, whereupon the State cross-moved to dismiss the claim on the ground of absolute privilege. The State's motion was granted.

We are confronted with a question of law which is one of first impression in this State. Is an Acting President of the State University College entitled to the defense of absolute privilege in an action for defamation relating to statements made within the scope of his official duties? Claimant contends that Dr. Corey enjoys only a qualified as opposed to an absolute privilege, the difference being that with a qualified privilege one is liable if there was actual malice, while with absolute privilege, one is immune irrespective of malice *(Sheridan v Crisona,* 14 NY2d 108). In *Sheridan v Crisona (supra),* the Court of Appeals granted absolute privilege to the President of the Borough of Queens, finding that the "considerations of public policy, which demand absolute privilege for what is said or written by * * * executives in the discharge of official duty, must certainly apply to a municipal executive such as a Borough President who is charged with substantial responsibilities" *(id.,* p 112). Relying on the holding in *Sheridan v Crisona (supra),* the Court of Appeals held in *Lombardo v Stoke* (18 NY2d 394) that the members of the defendant Board of Higher Education are such executives. We note that in extending the privilege to the board, the court refused to decide the question of whether the president of a municipal college has an absolute or qualified privilege.

On the theory that entitlement to an absolute privilege should turn on the nature and extent of the duties which are performed *(Duffy v Kipers,* 26 AD2d 127), New York appellate courts have extended the absolute privilege to the office of the Commissioner of Education *(Laurence Univ. v State of New York,* 41 AD2d 463); to a Town Supervisor, the principal town official *(Duffy v Kipers, supra);* and to the members of a board of education, who "have wide executive and administrative powers in the management and control of the educational affairs and interest within its charge * * * including the power to prescribe regulations and by-laws * * * [and who] perform a State function of high importance" *(Smith v Helbraun,* 21 AD2d 830). Similarly, absolute privilege has been extended to the County of Nassau and its Commissioner of Accounts, who is expressly empowered to perform governmental functions *(Kurat v County of Nassau,* 47 Misc 2d 783), and to a school district *(Thompson v Union Free School Dist. No. 1*

*of Huntington,* 45 Misc 2d 916), on the basis of *Smith v Helbraun (supra).*

In each of these cases, the recipient of the absolute privilege was empowered by law with substantial responsibilities for the performance of governmental functions of high importance. Presidents of State or county universities were accorded an absolute privilege in *Hughes v Bizzel* (189 Okla 472), *Roberts v Lenfestey* (264 So 2d 449 [Fla]), and *Sanford v Howard* (185 Okla 660). In the *Hughes* case *(supra,* pp 474-475), the court stated: "It is to the interest of the public that the best qualified persons serve the University. The board [Regents] must largely depend upon the president * * * for correct information as to the fitness and qualifications of those on the payroll and those seeking employment. If, in giving such information to the board, such officers were not under the rule of absolute privilege, every disgruntled person, refused employment or discharged, could file suit for damages for defamation or conspiracy against such officers and state a cause of action requiring them to stand trial before a jury as to their motives or the truthfulness of their statements, regardless of the correctness of the allegations of the petition or the merits of the cause. Such a rule would tend to deprive the board of the benefit of candor and full disclosure as to the qualifications of the employee or applicant. *The rule of absolute privilege in such a case is for the protection of the public and not for the protection of the officers"* (emphasis supplied).

We feel that the same policy considerations present in the cited cases warrant granting absolute privilege to the respondent herein.

The order should be affirmed, without costs.

MAHONEY, J. (dissenting).

We dissent.

The sole issue is whether an acting president of a State University College is entitled to a defense of absolute privilege in an action for defamation relating to statements made within the scope of his official duties.

The defense of absolute privilege has a conservative history in this State. Traditionally, and without dissent, New York courts have extended it to judicial, legislative and high-level executive personnel whose duties require implementation and discharge of official State or municipal functions. In *Sheridan v Crisona* (14 NY2d 108, 113), the Court of Appeals cited with

approval its holding in *Cheatum v Wehle* (5 NY2d 585) that an executive official is privileged to publish defamatory matter if it has some relation to the executive proceeding in which the official is acting. While the *Cheatum* case was concerned with a State executive, the court held in *Sheridan* that the same rationale, i.e., that the material was published while the subject official was engaged in a function connected with his office, was applicable to a New York City Borough President when he, too, was acting officially. In each instance, the same general considerations of public policy which demand absolute privilege for what is said and done by executives in the discharge of official duties prevailed *(Sheridan v Crisona, supra)*. Absolute privilege, however, is not an impenetrable barrier behind which public officials, regardless of their title of office, responsibilities and degree of authority, can take refuge in all instances. If what such an official says or does is unrelated to his duties or outside the ambit of his competence, he may be sued and held accountable. To attribute to the doctrine of "absolute privilege" a rigidity that would foreclose suit in all instances would not only be unfair and do great injury to the harmed, it would fail to advance the service of government *(Lombardo v Stoke,* 18 NY2d 394, 401; *James v Powell,* 14 NY2d 881; *Cheatum v Wehle, supra)*. Consequently, when we are dealing with an executive such as a president of a public college, as here, who is not at the highest level of the State University, or even one of its principal officers, we must be concerned to avoid overextension of the doctrine.

Only those officials who are charged with the executorial, legislative or judicial duty and obligation of discharging those functions, which if interrupted would be harmful to the State, are entitled to act and speak with immunity. The public's interest must be immediately involved and in danger *(Barr v Matteo,* 360 US 564; Prosser, Law of Torts [4th ed], § 114). The official should not be subordinate but, rather, one charged with the highest degree of responsibility in furthering the interests of the State or municipality involved. Looked at in this light, our appellate courts have extended the absolute privilege to the office of the Commissioner of Education *(Laurence Univ. v State of New York,* 41 AD2d 463) to a Town Supervisor, the principal town official *(Duffy v Kipers,* 26 AD2d 127) and to members of a board of education *(Smith v Helbraun,* 21 AD2d 830) while only a qualified privilege was extended to employees of a board of education *(Green v*

*Kinsella,* 36 AD2d 677) and to auditors in the State Department of Audit and Control *(Ward Telecommunications and Commuter Servs. v State of New York,* 83 Misc 2d 331). In each of those instances when absolute privilege was extended, the recipient was charged by law with substantial responsibilities for the performance of governmental functions of high importance.

Despite the importance of his role as advisor to the tenure committee, Dr. Corey was not an administrative official of the State University whose conduct invoked the immediate interests of the People. While it is of concern to all that our State-sponsored colleges be staffed with the most competent professors, it is hardly a matter of State-wide concern if the machinery for providing that ideal is temporarily disrupted. Certainly, it cannot be seriously argued that a dean or president of a private college would be entitled to an absolute privilege under facts similar to those herein, and we perceive nothing in the nature of the duties required of Dr. Corey before the ad hoc committee that should distinguish his position from that of his counterpart in a private college. The fact that the State University and its satellite colleges are publicly funded is not a determinative factor, particularly when all the other evidence at hand points to a decision-making process, within one of many public colleges in the State, that has to do with the tenure of a professor. The consequences of that process can only be minimal in relation to the public interest. Dr. Corey is neither a statutory officer nor an important official of the Department of Education of the State, nor is he charged with any duties relative to the administration of the State University system.

The majority's reliance on *Hughes v Bizzel* (189 Okla 472) is misplaced. The defendants in *Hughes* were the President of the University of Oklahoma and the Dean of the Medical School, both of whom allegedly made defamatory remarks concerning the plaintiff before that State's Board of Regents. Concededly, if the Commissioner of Education of this State or the Chancellor or President of our State University made like remarks before this State's Board of Regents, such officials, because of their office and the nature of their duties and obligations to the citizenry at large, would be afforded an absolute privilege and *Hughes,* if needed, would be an appropriate authority of a foreign jurisdiction to support that conclusion *(Laurence Univ. v State of New York, supra).*

However, where, as here, Dr. Corey was not acting directly on behalf of the Department of Education or the State University in connection with a stated goal or policy of State-wide concern, but, rather, as the Acting President of one of the many colleges that make up the State University, and upon a subject that related to the tenure of a single professor, and his comments would not have received any publication absent the limited amount occasioned by the present action, it is difficult to perceive how the goal of protecting our highest administrative, judicial and legislative officials from undue harassment is advanced by extending the salutary doctrine of absolute privilege to all presidents of public colleges, which is the effect of the majority's opinion. This difficulty is compounded since a fair reading of the record discloses that ultimately the defense of a qualified privilege will bring down the plaintiff's action, as there is little if any evidence that Dr. Corey acted maliciously in reporting facts he knew to be false.

Absolute privilege is a doctrine that should be sparingly extended *(Lombardo v Stoke, supra,* concurring opn of Judge KEATING, P 402) and, under the facts of this case, cannot be extended to Dr. Corey.

The order should be reversed and claimant's motion for discovery granted.

MAIN and REYNOLDS, JJ., concur with GREENBLOTT, J.P.; KANE and MAHONEY, JJ., dissent and vote to reverse in an opinion by MAHONEY, J.

Order affirmed, without costs.