Wachtler, J. (dissenting).
In my view an absolute privilege should attach in the instant case and, therefore, I dissent.
The appellant was seeking continuing appointment ("tenure”) as a member of the psychology department of the State University College at Cortland. Pursuant to the procedures established for reviewing an applicant’s credentials and qualifications, an ad hoc committee ("committee”), consisting of five members of the faculty at the college, was established. This committee was to investigate the applicant and render an advisory recommendation to the president of the college.
In December, 1974, the committee met to consider appellant’s application and called 17 witnesses in connection with the matter. One of these witnesses, Dr. Whitney Corey, was then the vice-president for academic affairs and the acting president of the college. During the course of the meeting, Dr. Corey, in response to inquiries from the committee, read portions of a previously undisclosed letter written about the appellant by an unidentified student. Appellant contends that the letter was defamatory and instituted this action against the State as Dr. Corey’s employer. Appellant moved for pretrial discovery and the State cross-moved to dismiss the claim, asserting the defense of absolute privilege. The Court of Claims granted the State’s cross motion, and the Appellate Division affirmed, by a divided court.
The issue presented is whether the acting president of a college within the State University system is accorded an absolute privilege with respect to allegedly defamatory statements of another reported by him in the course of his official duties. If that be the case, no liability may be imposed even if the statements were uttered with actual malice (see Sheridan v Crisona, 14 NY2d 108). If, on the other hand, Dr. Corey *287 enjoys only a qualified privilege, an action sounding in defamation would lie if the appellant could establish actual malice (see Hemmens v Nelson, 138 NY 517).
This question was left unanswered by this court’s holding in Lombardo v Stoke (18 NY2d 394, 398-399) where we noted that: "Whether or not the president of a municipal college may, under appropriate circumstances, raise the defense of absolute privilege * * * is a question we do not now decide in view of the record before us. In their complaint, the plaintiffs have actually alleged that the defamatory statement was issued 'with the knowledge and consent’ of the defendant board [of higher education] and published after the board 'ratified and approved’ the text. Accordingly, we need concern ourselves only with the scope of the board’s privilege which, under the circumstances, may be invoked by President Stoke who was allegedly acting at the board’s direction and on its behalf.” We then held that the board was entitled to absolute privilege in connection with a press release it had issued (Lombardo v Stoke, supra, p 399). Analysis of our decision in that case and of other leading cases leads me to the inescapable conclusion that the protection of absolute privilege is appropriate under the circumstances of this case.
Public policy considerations and the desire to promote the free flow of information necessary to the efficient administration of public affairs led this court to provide an executive official an absolute privilege "to publish false and defamatory matter * * * in the exercise of his executive function if the matter has some relation to the executive proceeding in which the official is acting” (Cheatum v Wehle, 5 NY2d 585, 592, citing 3 Restatement, Torts, § 591). While the Cheatum case dealt with executive officers of the State, courts have recognized that similar considerations of public policy mandated the extension of the shield of absolute immunity to other executive officials as long as the allegedly defamatory remarks were made within the scope of their official duties (see, e.g., Sheridan v Crisona, 14 NY2d 108, supra [a borough president]; Lombardo v Stoke, 18 NY2d 394, supra [the board of higher education]; Laurence Univ. v State of New York, 41 AD2d 463 [Commissioner of Education and his subordinates]; Duffy v Kipers, 26 AD2d 127 [town supervisor]; Smith v Helbraun, 21 AD2d 830 [Board of Education of the City of Peekskill]). These decisions make clear the rule that where the executive official is acting within the scope of his official duties and the matter *288 is one of general importance and public concern, he is cloaked with an absolute privilege. The privilege is extended in order to secure and enhance the public policy of this State to encourage efficient governmental administration.
In the case now before us, the granting or withholding of tenure at State institutions of higher learning is clearly a matter of public interest. The public is best served only if the most qualified applicants receive appointments. In this regard, the committee was established for the purpose of advising the president in matters of tenure, and it cannot be gainsaid it is essential that the committee be fully and candidly apprised of all matters which might in any way relate to the applicant’s fitness and qualifications. Concomitantly, the acting president of a college within the State University system, when in possession of information potentially pertinent to the committee’s inquiry, is clearly acting within the scope of his official duties and must be free to communicate that information to the committee in an open and unfettered manner.
Further, the burden of investigating the credibility of the information in the possession of the school official should not be placed upon his shoulders. Rather, it is the committee that is charged with making a report and recommendation concerning tenure. Hence, it is the committee which should investigate the information received by it and determine the weight to be accorded that information. To require that the acting president verify all information received by him before he could transmit it to the committee would distort the established procedure for tenure decisions and tend to deprive the committee of the benefit of complete candor and full disclosure of essential information. The protection of the interests of the public at large therefore requires that Dr. Corey be accorded this absolute privilege.
Of course, we need but note that this absolute privilege only attaches where the official is acting in his official capacity and within the context of an official proceeding (Lombardo v Stoke, 18 NY2d 394, 401, supra). Further, the subject of the communication must be relevant to the matter at issue (see James v Powell, 14 NY2d 881). Thus, while Dr. Corey’s statements before the committee are protected by absolute privilege, were he to read the same letter to the general public from the steps of the schoolhouse, no such protection would be granted.
Accordingly, the order of the Appellate Division should be affirmed.
*289 Opinion by Judge Fuchsberg in which Judge Cooke concurs; Chief Judge Breitel and Judge Gabrielli concur in another opinion by Judge Jones; Judge Wachtler dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order reversed, without costs, claim reinstated and case remitted to the Court of Claims for further proceedings in accordance with the opinions herein.