*175 OPINION OF THE COURT
John J. Callahan, J.
The petitioner seeks reinstatement as Director of the Youth Board and Deputy Commissioner of the Department of Human Resources of the City of Buffalo.
In August of 1973 petitioner was hired by the Buffalo Youth Board as its executive director for an unspecified term. Notice of this appointment was submitted to the Common Council to fulfill the requirement of section 441 of the Buffalo City Charter.
The city charter was thereafter amended in relation to the creation of a Department of Human Resources. (Local Laws No. 1975, No. 7 of City of Buffalo). This legislation establishes the Department of Human Resources and specifies its officers and their duties. It provides for a Division of Youth headed by a director (§ 285.13) who shall be a deputy of the Commissioner of Human Resources (§ 285.6). His duties and areas of responsibility are enumerated therein (§ 285.13). The Division for Youth is to be known as the Buffalo Youth Bureau (§ 285.14).
In January, following his inauguration, the duly elected Mayor appointed a new Commissioner of Human Resources. He immediately terminated all deputies in that department. Petitioner received notice contained in a letter dated January 3, 1978 stating "Effective January 3, 1978 your services are terminated.” Since no grounds were given, it was apparently founded on the desire of the new administration for a change of leadership among the higher echelon.
Upon dismissal petitioner commenced this proceeding seeking reinstatement. He advances two arguments to support his claim that his constitutional rights have been violated. The first is that his dismissal was a patronage one prohibited by Elrod v Burns (427 US 347). The second is that only the chief executive of the municipality or the Youth Board can dismiss the Director of Youth.
Although Elrod v Burns (supra) is often considered to have eliminated dismissals based on patronage, its protection is actually limited. The court recognized the vested interests in employment of public employees (emphasis supplied) and the due process requirements which flow from those rights. However, the court also recognized the "need to insure that policies which the electorate has sanctioned are effectively *176 implemented.” They found that "That interest can be fully satisfied by limiting patronage dismissals to policymaking positions.” (Elrod v Burns, supra, p 372.) What Elrod did therefore was not to eliminate patronage dismissals but to limit those dismissals to those who have not acquired vested property rights in employment, i.e., public officers or policymakers (Lowy, Constitutional Limitations on the Dismissal of Public Employees, 43 Brooklyn L Rev 1). In order to invoke constitutional due process rights, however, it has been said that a person must have more than a unilateral expectation of property. He must, instead, have a legitimate claim of entitlement to it. (Board of Regents v Roth, 408 US 564.) The sufficiency of a claim of entitlement to those rights is determined by reference to State law. (Bishop v Wood, 426 US 341; Codd v Velger, 429 US 624.)
New York has recognized the rights and vested interests of public employees and granted them complete due process rights through its Civil Service Law. It has denied such protection, however, to public, or independent, officers. (Matter of O’Day v Yeager, 308 NY 580; Matter of Nolan v Tully, 52 AD2d 295.) These are defined as those whose position is created, and whose powers and duties are prescribed, by statute and who exercise a high degree of initiative and independent judgment. (O’Day v Yeager, supra, p 586.) The indicia of a public officer are found in the nature of the office. Those who have a right, authority and duty conferred by law by which they exercise some portion of the sovereign functions of the government for the benefit of the public are public officers. (Matter of Haller v Carlson, 42 AD2d 829; 1975 Opns Atty Gen 68-69.)
The duties of the Director of Youth include co-ordination of activities for public, private and religious agencies devoted to the welfare and protection of youth. This requires co-operation with other agencies and the study of activities of youths (§ 285.13). The multitude and diversity of the services provided by the Division for Youth outlined in the Department of Human Resources Report for the year 1977 is a reflection of the great responsibilities of the director. The directors of all divisions are required to direct and administer the affairs of the division, discharge any and all duties needed or necessary to effectuate the purposes of the division and other duties conferred by the article, ordinance or general law. These descriptions indicate to the court that petitioner is indeed a *177 public officer rather than a public employee; ergo he has no vested property rights in his employment nor is he entitled to the due process protection which flows from those rights. Whether it be said that he is in a policymaking role; that he is an independent officer; or that he is a public officer, he can find no protection in the Civil Service Law or in the Constitution.
The remaining question is whether the Commissioner of Human Resources has the authority to discharge his deputies. Although the petitioner was hired by the Youth Board and subject to their control and direction for a number of years, that is no longer the procedure. The 1974 legislation creating the Department of Human Resources and its various divisions has clearly superseded both the earlier legislation creating the youth bureau and the rules of procedure within the bureau. All personnel formerly under the jurisdiction of the bureau were transferred to the Department of Human Resources (§ 285.29). It also reversed the roles of the board and its director and relegated the board to an advisory position (§ 285.16). We find no conflict between this legislation and the regulations of the State Division for Youth as set forth at 9 NYCRR 165.1. Although the regulations require the Mayor, as the executive, to appoint the Director of Youth, this does not prohibit an agent of the Mayor, in this case a commissioner, from discharging the director. Article 5 of the Charter of the City of Buffalo permits the head of each department to appoint and remove each director and head of divisions. This is merely a delegation of the powers of the executive. It is apparent that the actions of the Commissioner of Human Resources in this instance were, if not approved by the executive, at least acquiesced in by him.
The nature of petitioner’s position and the fact that his appointment was for an indefinite term make him subject to removal at the pleasure of the appointing authority (NY Const, art XIII, § 2). The petitioner’s termination therefore was proper and did not interfere with his constitutional rights to employment. While petitioner’s record of valuable service to the city and its youth, as expressed by a letter of support from the Youth Board, is an impressive one, this court cannot ignore the constitutional imperatives. History is replete with statistics enunciating changes within the chambers and staff of a new head of State. Incumbent executive talent, without regard for exceptional performance or qualifications, is re *178 placed. This is an unfortunate but very realistic aspect of our political system. However, the courts are not empowered to substitute or reverse the judgment of the duly elected officials unless such actions are illegal or invalid. (Alomar v Dwyer, 447 F2d 482, cert den 404 US 1020.)
Accordingly, the petition is denied.