**Michael M. BADEN, Plaintiff-Appellee-Cross-Appellant,**

v.

**Edward I. KOCH, Individually, and as Mayor of the City of New York; S. Michael Nadel, as Director of the Department of Personnel of the City of New York; Elliott M. Gross, M.D.; and the City of New York, Defendants-Cross-Appellees,**

**Edward I. Koch, Individually, and as Mayor of the City of New York; and the City of New York, Defendants-Appellants-Cross-Appellees.**

**Nos. 116, 209, Docket 84–7844, 84–7846.**

United States Court of Appeals, Second Circuit.

Argued Oct. 28, 1985.

Decided Aug. 21, 1986.

---

Doron Gopstein, Office of the Corporation Counsel, City of New York, New York City (Frederick A.O. Schwarz, Jr., Corporation Counsel for the City of New York, Patricia A. O'Malley, Margaret G. King, Fred Kolikoff, Office of the Corporation Counsel, City of New York, New York City, of counsel), for defendants-appellants-cross-appellees Edward I. Koch and the City of New York.

Robert K. Tanenbaum, Beverly Hills, Cal., Kenneth E. Gordon, New York City (Murray A. Gordon, Richard Imbrogno, Gerald I. Krafsur, Gordon & Gordon, New York City, of counsel), for plaintiff-appellee-cross-appellant Michael M. Baden.

Howard M. Squadron, New York City (Eugenie C. Gavenchak, Squadron, Ellenoff, Plesent & Lehrer, New York City, of counsel), for defendant-cross-appellee Elliott M. Gross, M.D.

Before MESKILL, CARDAMONE and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a final judgment entered in the United States District Court for the Southern District of New York, Haight, J., on January 25, 1985, awarding plaintiff Michael M. Baden, M.D. $100,000 damages, plus interest and attorneys' fees against Mayor Edward I. Koch, in his official capacity, and the City of New York. The award represented compensatory damages for a violation of Baden's constitutional rights arising from Koch's publication of stigmatizing statements in conjunction with Baden's removal from his position as Chief Medical Examiner (CME) of the City of New York. The district court held that Baden's removal in conjunction with that publication and without a post-removal, name-clearing hearing violated his rights under the Fourteenth Amendment of the United States Constitution.

This is our second look at the much publicized firing of Dr. Baden. Earlier we reversed the district court's decision that Baden's removal without a pre-removal hearing had deprived him of a constitutionally protected property interest, vacated the court's order reinstating Baden and remanded for further proceedings. *Baden v. Koch*, 638 F.2d 486, 493 (2d Cir.1980) (*Baden I*). The remand resulted in the award of damages, interest and attorneys' fees before us on this appeal.

We affirm in part, reverse in part and dismiss the complaint.

Because most of the facts recited in *Baden I* are important to an understanding of our decision, they will be repeated here.

Baden, who had been a Deputy Chief Medical Examiner since 1972 was appointed

CME by Mayor Koch effective August 1, 1978, based on results of a competitive examination. At a meeting on July 13, 1979, Koch told Baden that he had conducted inquiries as to whether Baden should be removed from office before the end of his one-year probationary term. The Mayor had received adverse written reports from Dr. Reinaldo A. Ferrer, City Commissioner of the Department of Health, and Robert M. Morgenthau, District Attorney of New York County, and favorable written reports from the District Attorneys of Bronx and Kings Counties.[1] The Mayor furnished copies of all of these reports to Baden and asked him to respond. Baden wrote two detailed, vigorous refutations of the complaints against him and submitted them to the Mayor. Nevertheless, on July 30, 1979, Mayor Koch met with Baden and advised him that he would be removed as CME. In a memorandum delivered to Baden that same day, Koch outlined the evaluative procedures used and the reasons for Baden's removal:

> Since your one year probation period as Chief Medical Examiner will conclude on July 31, 1979, I have requested of various government officials their opinions concerning your performance in office. I have carefully reviewed Commissioner Ferrer's memorandum of July 13, 1979 and District Attorney Morgenthau's letter of July 12, 1979, copies of which were furnished to you at our meeting of July 13, 1979, as well as your replies of July 19th and July 20th respectively. In addition, I have considered the letters from the other District Attorneys and Mr. Morgenthau's response of July 30th to your letter of July 20th.

> After review and consideration of the matter, I have decided to remove you as the Chief Medical Examiner for the reasons stated in Dr. Ferrer's memorandum and Mr. Morgenthau's letters. This letter confirms my decision which I communicated to you at our meeting of July 30th.

In accord with the procedures set forth in Section 557(a) of the City Charter, I am causing this letter, together with the letters referred to in this letter, to be served upon you and filed in the office of the Director of Personnel. Should you desire, I will withhold public comment upon this matter or dissemination of this memorandum pending your making a public explanation of the matters which are contained in the memorandum and letters referred to above until 3:00 PM July 31, 1979.

Baden made no public statement about his removal from office during this time period. Mayor Koch announced Baden's removal from office on July 31, 1979, and released to the news media the letters from Ferrer, Morgenthau and the other district attorneys, together with Baden's written responses. On August 3, 1979, Baden requested a public hearing to refute the charges made in the Ferrer and Morgenthau letters. Koch denied the request.

Following his removal as CME, Baden resumed his former post as Deputy CME, but reserved his legal right to contest his removal. He instituted this action on August 16, 1979, naming as defendants the City of New York, Mayor Koch, Dr. Elliott M. Gross, who had been appointed to succeed Baden as CME, and S. Michael Nadel, Director of the Department of Personnel of the City of New York, and asserting these five claims:

1. Koch violated his Fourteenth Amendment due process rights by removing him on the basis of false, stigmatizing charges without affording him the opportunity for a hearing.

2. His removal from his classified civil service position was unlawfully arbitrary and unreasonable, in that the asserted reasons were untrue and malicious.

3. At the time of his removal, he had acquired a constitutionally protected

---

1. A written report dated July 26, 1979 from the District Attorney of Queens County was also favorable to Baden.

property right in the position of Chief Medical Examiner, so that he could not be removed without a hearing.

4. His removal, and the appointment of Gross as his successor, violated the New York State Constitution and pertinent rules and regulations.

5. His removal was unconstitutional because it was based on the exercise, by him and members of his family, of their First Amendment rights.

Baden asked for a declaration that his removal was in violation of 42 U.S.C. § 1983 (1982) and other applicable federal and state laws. He sought reinstatement to the position of Chief Medical Examiner and an award of back pay, front pay, additional compensatory damages, costs and attorneys' fees.

The district court on May 20, 1980, granted Baden's motion for partial summary judgment and denied defendants' motion for summary judgment. The court declared that Baden had acquired a property interest in the position of CME and that his removal from office without a pre-removal hearing was, therefore, unconstitutional. As a remedy for the deprivation of Baden's property interest, the court ordered his reinstatement with back pay. The court also held that Baden had been deprived of a constitutionally protected liberty interest without due process of law by the publication of stigmatizing statements in conjunction with his removal from office and the denial of a hearing to clear his name. The court ordered a trial to determine the damages, if any, resulting from the liberty deprivation.

On defendants' interlocutory appeal from the reinstatement order, we disagreed with the district court's conclusion that Baden was entitled to a hearing prior to his removal from office. 638 F.2d at 488. We held that Baden did not have a property interest in the CME position and thus no pre-deprivation hearing was required. *Id.* at 492–93. We vacated the reinstatement order and remanded for further proceedings. *Id.* at 493.

Final judgment was entered on January 25, 1985 following a lengthy trial. The district court awarded $100,000 compensatory damages with interest, plus costs, including attorneys' fees, on Baden's liberty interest claim and dismissed all of his other claims. Baden appeals only from the dismissal of his property interest claim; Koch and the City of New York appeal from the judgment in Baden's favor on the liberty interest claim. We reject Baden's appeal, reverse the judgment as to his liberty interest claim and dismiss the complaint.

## DISCUSSION

Before we turn to the liberty interest question, we first address Baden's argument that we must reverse our earlier decision on his property interest claim in light of *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

We have repeatedly stated that we will not depart from the sound policy of the law of the case doctrine absent "cogent" or "compelling" reasons. *See Doe v. New York City Department of Social Services,* 709 F.2d 782, 789 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). One major ground justifying reconsideration is "'an intervening change of controlling law.'" *Id.* (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478 at 790 (1981)). Baden claims that *Loudermill* changed the controlling law for determining the existence of a property interest in employment. We do not agree.

The existence *vel non* of a property right in continued employment was not significantly disputed in *Loudermill. See* 470 U.S. at 539 & n. 5, 105 S.Ct. at 1492 & n. 5. The question in *Loudermill* was whether such right, *once conferred,* could be taken away without due process. The Court held that it could not, rejecting the argument that the state, in conferring a property right, could condition it on the employee's acceptance of constitutionally inadequate termination proceedings:

"Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. *While the legislature may elect not to confer a property interest in [public] employment*, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."

470 U.S. at 541, 105 S.Ct. at 1493 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in the result in part) (footnote omitted)) (emphasis added).

In *Baden I*, we determined that Baden was appointed under section 557(a) of the New York City Charter, 1 N.Y. City Charter & Ad. Code § 557(a) (Williams Supp. 1984), which, we determined, permits the removal of a CME from office without cause. 638 F.2d at 489–92. We specifically rejected the argument that he was covered by a civil service provision allowing removal only for cause. *Id.* Accordingly, we held that Baden had no property right in continued employment as CME because the legislature had elected not to confer such a right on him. *Id.* at 489, 493.

Our reasoning was completely consistent with that of the Supreme Court in *Loudermill*. The bus mechanic and security guard respondents in *Loudermill*, unlike Baden, were covered by a statute permitting their dismissal only for cause. 470 U.S. at 535, 105 S.Ct. at 1489–90. According to the Court, that statute "create[d]" the property interests of which respondents claimed they had been deprived. *Id.* at 536, 105 S.Ct. at 1490. As the Court also made clear in *Loudermill*, where there is no such property right, a constitutional due process claim based on deprivation of property will not lie for termination of employment. *Id.*

Plainly, therefore, *Loudermill* does not require us to depart from the law of the case established in *Baden I*. We reaffirm our holding in *Baden I* that Baden is not entitled to reinstatement.

*Liberty Interest Claim*

It is not easy for a court to determine whether what a plaintiff calls a liberty interest falls within the constitutional concept of liberty. *See Board of Regents v. Roth*, 408 U.S. 564, 571–72, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). Nonetheless, while liberty has not been defined with exactness, some of the things included within the term have been definitely stated. *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). The Supreme Court in *Meyer* recognized that liberty encompasses "the right of the individual to contract, *to engage in any of the common occupations of life*, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Id.* (emphasis added).

More recently, the Court has refined the parameters of liberty. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Roth*. The Court indicated in *Roth* that when a state employee is discharged two constitutionally protected liberty interests might be implicated. 408 U.S. at 573–74, 92 S.Ct. at 2707. First is the individual's interest in his or her " 'good name, reputation, honor, or integrity.' " 408 U.S. at 573, 92 S.Ct. at 2707 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971)). Second is the individual's interest in avoiding "a stigma or other disability" that forecloses other employment opportunities. *Id.* The Court in *Paul v. Davis* made it clear that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." 424 U.S. at 701, 96 S.Ct. at 1160. The Court noted, for example, that in *Roth*

it was not thought sufficient to establish a claim under § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; the defamation had to occur in the course of the termination of employment. Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee *who continues to be an employee.*

424 U.S. at 710, 96 S.Ct. at 1165 (emphasis added).

Baden claims that he was stigmatized by the publication of false charges in connection with his removal as CME. We have already decided that Baden did not have a property interest in the CME position and, thus, was not entitled to a pre-deprivation hearing. *Baden I.* Therefore, the removal from office was lawful and does not, by itself, give rise to a liberty interest claim. Neither do the widely publicized derogatory statements standing alone. Without more, as Baden concedes in his brief, Br. of Appellee-Cross-Appellant at 43–44 & n. 10, they would only form the basis for a state law defamation claim. In order to succeed on his liberty interest claim, Baden must also prove that Koch improperly refused to grant him a post-removal opportunity to refute the false charges that led to his removal. *See Roth,* 408 U.S. at 573–74, 92 S.Ct. at 2707; *see also Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam) ("[T]he hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.' ") (quoting *Roth,* 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12).

Baden alleges a less significant deprivation than those asserted in many Supreme Court liberty interest cases. Baden was not "not rehired," *see Roth,* 408 U.S. at 566, 92 S.Ct. at 2703 (state declined to re-hire nontenured teacher), or terminated, *see Codd v. Velger,* 429 U.S. at 625, 97 S.Ct. at 882 (policeman claimed that derog-

atory statements in connection with firing from first job had caused firing from second job); *Bishop v. Wood,* 426 U.S. at 342, 96 S.Ct. at 2076 (city manager terminated policeman's employment); *cf. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 888, 81 S.Ct. 1743, 1745, 6 L.Ed.2d 1230 (1961) (cafeteria worker barred from military installation); *Huntley v. Community School Board,* 543 F.2d 979, 984–86 (2d Cir.1976) (property interest in future employment implicated when school principal dismissed), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977). Baden was merely demoted from his post of Chief Medical Examiner to his former position as a deputy medical examiner for the City of New York with a commensurate reduction in salary. Thus, his liberty was infringed to a lesser degree than that of plaintiffs who lost their positions and joined the ranks of the unemployed. *See Paul v. Davis,* 424 U.S. at 710, 96 S.Ct. at 1165 (no name-clearing hearing required by *Roth* when state employer defames employee "who continues to be an employee").

Moreover, the Supreme Court has noted that "it would stretch the [liberty interest] concept too far 'to suggest that a person is deprived of "liberty" when he simply is not rehired in one job but remains as free as before to seek another.' " *Bishop v. Wood,* 426 U.S. at 348, 96 S.Ct. at 2079 (citing *Roth,* 408 U.S. at 575, 92 S.Ct. at 2708). Accordingly, in *Huntley,* we found that where it was unlikely that the terminated plaintiff would ever again obtain a supervisory position in the public schools or elsewhere, this deprivation coupled with damage to his professional reputation entitled him to recover on his due process claim. 543 F.2d at 984–86. Again, the situation here is quite different. Baden has maintained a supervisory position and there is nothing in the record to show that Baden as an M.D. cannot obtain government or non-government employment using his skills in forensic medicine. While his demotion "might make him somewhat less attractive to some other employers," *Roth,* 408 U.S. at 574 n. 13, 92 S.Ct. at 2707 n. 13,

he can still practice his profession. Indeed, in the years immediately following Baden's removal as CME he has prominently participated in medical-legal conferences, seminars, symposia and meetings, being listed on the programs as former CME of New York City and Deputy Chief Medical Examiner.

Thus, Baden has not been foreclosed from a "range of opportunities," *id.* at 574, 92 S.Ct. at 2707, but only from holding the CME position in New York City at this time. The record contains no bar to his being considered for the CME position should it again become vacant. Even if there were such a bar, we do not believe that his liberty interest in his reputation entitles him to the "top position," which seems to be the gist of his claim. For all of the reasons above, we conclude that Baden has asserted at best a weak liberty interest under the Fourteenth Amendment.

*Due Process*

We have examined the amount of process accorded Dr. Baden under the circumstances of this case and conclude that he received all the process that was due him.

Because due process is not a technical concept "unrelated to time, place and circumstances," *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 162, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, *J.,* concurring), but by its nature requires flexible procedures, see *Cafeteria Workers v. McElroy,* 367 U.S. at 895, 81 S.Ct. at 1748; *Hannah v. Larche,* 363 U.S. 420, 440, 442, 80 S.Ct. 1502, 1513, 1514, 4 L.Ed.2d 1307 (1960); *FCC v. WJR,* 337 U.S. 265, 275–76 (1949); *Hagar v. Reclamation District No. 108,* 111 U.S. 701, 707–09, 4 S.Ct. 663, 666–68, 28 L.Ed.2d 569 (1884), our analysis of the process required by the Constitution in this circumstance "must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action," *Cafeteria Workers,* 367 U.S. at 895, 81 S.Ct. at 1748. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), teaches that in determining the amount of process due an individual, we must weigh the strength of the individual's interest, the risk of erroneous deprivation, the probable value, if any, of requested additional procedures and the state's interest in providing (or not providing) those procedures. *See also Loudermill,* 470 U.S. ——, 105 S.Ct. at 1493; *Haygood v. Younger,* 769 F.2d 1350, 1355–56 (9th Cir.) (in banc), *cert. denied sub. nom. Cranke v. Haygood,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1985). As Judge Friendly stated it in his seminal article: "The required degree of procedural safeguards varies directly with the importance of the private interest affected and the need for and usefulness of the particular safeguard in the given circumstances and inversely with the burden and any other adverse consequences of affording it." H. Friendly, *Some Kind of Hearing,* 123 U.Pa.L.Rev. 1267, 1278 (1975) (footnote omitted).

We have examined *supra* the private interest asserted by Baden and have concluded that while it is a liberty interest, it is a relatively weak one. We turn now to the countervailing government interest. We conclude that this interest is quite strong.

New York City's interest is in the ability of its executive officer to respond promptly and effectively to complaints about a high level official who is serving at the executive's discretion. Preserving that ability is plainly important to the functioning of government. The creation of such discretionary posts by the legislature is a recognition that quick adjustments among top personnel may sometimes be necessary for the executive branch to continue to do its job. Indeed, in giving the executive the power to make such personnel changes, the legislature also imposes a duty to do so. An executive who fails to act when the facts demand action will often be taken to task by the legislature, the media and the public for the continued shortcomings of his subordinates. In deciding what procedures are constitutionally required when such adjustments are made, therefore, we must not unnecessarily hinder municipal

executives in their ability to make these important personnel decisions. *Cf. Bishop v. Wood,* 426 U.S. at 349, 96 S.Ct. at 2079 ("The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.").

The next step in our analysis is to compare the procedures actually afforded to Baden with those to which he asserts a right in order to determine whether the asserted benefits of the additional procedures outweigh the burdens of implementing them. We note at the outset that "the remedy mandated by the Due Process Clause" for the deprivation of liberty of the type claimed by Baden "is 'an opportunity to refute the charge' " against him in order " 'to clear his name.' " *Codd v. Velger,* 429 U.S. at 627, 97 S.Ct. at 883 (quoting *Roth,* 408 U.S. at 573 & n. 12, 92 S.Ct. at 2707 & n. 12). In the terms used in *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903, the "risk of an erroneous deprivation" in this context is the risk that false charges will go unrefuted and that a falsely accused employee's name will go uncleared.

Here, Baden was explicitly notified of the complaints made by high municipal officials about his performance as CME. After informing Baden privately of these complaints, Mayor Koch provided him with an opportunity to respond to them. Baden did respond in writing, at length and in great detail. After considering Baden's two letters and a further letter from one of the complaining officials, Mayor Koch decided to remove Baden from office. He then offered Baden a chance to state his case to the public prior to Koch's own announcement of Baden's removal. Baden declined this opportunity. Finally, when Koch announced his decision and released the complaining letters to the news media, he also released Baden's detailed written responses to the complaints, thereby, in effect, making public statements refuting most of the charges on Baden's behalf.[2]

In addition to these procedures, Baden claims a right to a post-removal trial-type hearing. He argues that such a formal hearing is required to accommodate his interest in clearing his name. We conclude that any benefits derived from affording such a hearing to Baden would be more than outweighed by the burdens imposed on government thereby.

The utility of a formal name-clearing hearing in Baden's case would have been slight. Baden had already performed the function of such a hearing, refuting the charges against him both privately to his employer and publicly when his written refutations were published along with the statements critical of his performance. It has been recognized that a hearing on written materials only is, in appropriate cases, enough to satisfy the Due Process Clause. H. Friendly, *Some Kind of Hearing, supra,* at 1270, 1281.

Moreover, the formal hearing that Baden sought would hardly have been an unmixed blessing. While Baden would have had a chance to re-refute the charges against him at the hearing, the entire record including the charges that the district court found to be truthful would once again have been up for public scrutiny.

In addition, the district court found that Baden at the time of his removal from office was a public figure. With his high degree of access to the news media, Baden did not need a formal hearing as a forum in which to repeat his side of the story. As a public figure, he could presumably have called a press conference and provided any further defense of his record or explanation of his removal from office that he desired to give.

For all of these reasons, the benefits to Baden of a trial-type hearing would have been marginal at best in view of the less

---

2. Baden's first two letters to Mayor Koch, of course, did not address additional charges—principally consisting of elaborations on previous charges—made in District Attorney Morgenthau's July 30, 1979 letter to the Mayor. However, Baden could have addressed these charges in the public statement that he declined to make. He was also not barred from publishing his letter of August 10, 1979 in which he responded in detail to Morgenthau's July 30 letter.

formal process that had been provided to him. The hearing would not have materially lessened the already small risk that any false charges had gone unanswered, given the various prior opportunities Baden had had to answer them. In contrast, the burdens imposed on municipal government by a formal hearing requirement would be significant.

If we were to hold that a government executive's public statement of reasons for a discretionary personnel decision automatically triggered a requirement for a formal trial-type hearing, executives would be tempted to refrain from explaining their personnel actions in public, a result contrary to the strong policy of maintaining an informed electorate. As a nation, we have a tradition of wanting our elected officials to explain why they do what they do. Furthermore, faced with the prospect of expensive, time-consuming trial-type hearings whenever an explanation is given for a discretionary employee's removal from office, municipal executives might well hesitate to make personnel decisions except in the most egregious cases. Attempts to fine-tune municipal administration would be abandoned as not worth the trouble. Executives would make do with subordinates whose performance is inept rather than face the high cost of transferring or replacing them. The legislature's deliberate decision that certain high level employees should serve at the executive's discretion would be rendered meaningless.

Thus, the costs to society of our holding that a formal trial-type hearing is invariably required in a case like the present one would clearly outweigh any benefit to the employee involved. Having weighed the competing interests and having considered the procedures actually used in Baden's case and the benefits and burdens entailed by the more formal procedure he requests, we conclude that Baden received all the process that was due him. In all of the circumstances, Baden was afforded an adequate opportunity to refute the charges against him and to clear his name.

In view of this holding, we need not consider appellants' claim that Mayor Koch's statements about Dr. Baden should receive the benefit of the actual malice test of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). We also need not examine the claim that the court erred in determining which portion of Baden's emotional distress was caused by the false component of the statements published about him.

We reverse the judgment and dismiss the complaint. The parties shall bear their own costs.